# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

MISC. CASE NO.: 5:20-mc-4

| | |
|---|---|
| In re:<br><br>APPLICATION OF MOTHER'S MILK, INC., FOR *EX PARTE* ORDER TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS | **DECLARATION OF CHRISTOPHER P. FOLEY IN SUPPORT OF APPLICATION OF MOTHER'S MILK, INC., FOR AN *EX PARTE* ORDER PURSUANT TO 28 U.S.C. § 1782(a) TO OBTAIN DISCOVERY FOR USE IN A FOREIGN PROCEEDING** |

Christopher P. Foley declares as follows:

1. I am a partner in the Finnegan firm, a law firm specializing in intellectual property. The Finnegan firm has five U.S. offices and five international offices. I presently reside in the firm's office in Reston, Virginia.

2. In 2013, I represented PQ Corporation in intellectual property matters. In 2013, PQ was engaged in patent litigation in Korea against KD Corporation, a Korean company that had a representative, Thomas J. Pullukat, in Florida. Inasmuch as Korean law does not provide for compulsory discovery as in the United States, it became apparent that pertinent sales and technical information would have to be obtained in the United States.

3. In view of the foregoing, I prepared an Application for an *Ex Parte* Order to obtain discovery for use in the Korean proceeding. In doing so, I relied on 28 U.S.C. § 1782(a) and the U.S. Supreme Court decision in *Intel Corp v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). The Application was filed by local counsel in Orlando. Attached is a copy of an Order issued by Judge Honeywell of the U.S. District Court for the Middle District of Florida, Orlando Division (Exhibit A) granting discovery under 28 U.S.C. § 1782(a).

4. The technical and sales information obtained as a result of PQ's Application for *Ex Parte* discovery was introduced at trial in the Korean Court and accepted by the Judge. The technical information was important in supporting a finding by the Korean Court of patent infringement. As a result of the sales information obtained through discovery, PQ was awarded $2M in damages.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: February 19, 2020

*Christopher P. Foley*
CHRISTOPHER P. FOLEY
Attorney at Law
Finnegan
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190

2

# EXHIBIT A

2013 WL 3270407
Only the Westlaw citation is currently available.
United States District Court, M.D. Florida,
Orlando Division.

In re APPLICATION OF PQ CORPORATION FOR EX PARTE ORDER TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS.

No. 6:13–mc–9–Orl–36KRS.
|
June 26, 2013.

**Attorneys and Law Firms**

Stephen H. Luther, Allen, Dyer, Doppelt, Milbrath & Gilchrist, PA, Orlando, FL, for Movant.

R. David De Armas, Cramer, Price & De Armas, PA, Orlando, FL, for Defendant.

*ORDER*

CHARLENE EDWARDS HONEYWELL, District Judge.

*1 This cause comes before the Court upon the Report and Recommendation filed by Magistrate Judge Karla R. Spaulding on June 5, 2013 (Doc. 9). In the Report and Recommendation, Judge Spaulding concludes that the balance of factors weighs in favor of permitting more limited discovery, and recommends granting in part PQ Corporation's Application for an Order Pursuant to 28 U.S.C. § 1782(a) to Obtain Discovery for Use in Foreign Proceedings ("PQ's Application") (Doc. 1). Doc. 9, pp. 6–12. No party has objected to the Report and Recommendation and the time to do so has expired.

Upon review, the Court agrees with Magistrate Judge Spaulding that the fact that Thomas J. Pullukat ("Pullukat") will not be a named party in the Korean litigation and will not be subject to discovery in Korea weigh in favor of granting PQ's Application. *Id.* at 7–10; *see Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 263, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004) (setting out factors to consider when determining whether to grant a 28 U.S.C. § 1782(a) application, including whether the person from whom discovery is sought is a participant in the foreign proceeding, in which case, the need for 28 U.S.C. § 1782(a) is less apparent). However, the Court also agrees that PQ Corporation's proposed subpoenas to Pullukat are unduly broad with respect to time and subject matter. *Id.* at 12; *c.f. Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.,* 685 F.3d 987, 999 (11th Cir.2012).

Therefore, after careful consideration of the Report and Recommendation of the Magistrate Judge, in conjunction with an independent examination of the court file, the Court is of the opinion that the Magistrate Judge's Report and Recommendation should be adopted, confirmed, and approved in all respects.

Accordingly, it is hereby **ORDERED and ADJUDGED:**

1. The Report and Recommendation of the Magistrate Judge (Doc. 9) is adopted, confirmed, and approved in all respects and is made a part of this order for all purposes, including appellate review.

2. PQ Corporation's Application for an Order Pursuant to 28 U.S.C. § 1782(a) to Obtain Discovery for Use in Foreign Proceedings (Doc. 1) is **GRANTED in part:**

   a) PQ Corporation's request to serve the proposed subpoenas submitted with the Application is **DENIED.** PQ Corporation may serve more narrowly tailored subpoenas within fourteen (14) days of the date of this Order.

   b) Pullukat is permitted to object to the resubmitted subpoenas or file a motion for a protective order as provided for by the Federal Rules of Civil Procedure, after conferring with counsel for PQ Corporation as required by Local Rule 3.01(g).

**DONE** and **ORDERED** in Orlando, Florida on June 26, 2013.

*REPORT AND RECOMMENDATION*

KARLA R. SPAULDING, United States Magistrate Judge.

**TO THE UNITED STATES DISTRICT COURT:**
This cause came on for consideration without oral argument on the following motion filed herein:

**MOTION:** APPLICATION OF PQ CORPORATION FOR AN *EX PARTE* ORDER PURSUANT TO 28 U.S.C. § 1782(a) TO OBTAIN

**DISCOVERY FOR USE IN FOREIGN PROCEEDINGS (Doc. No. 1)**

**FILED:** **January 23, 2013**

**I. PROCEDURAL HISTORY.**

*2 On January 23, 2013, PQ Corporation ("PQ") filed the above-referenced Application with this Court for an *ex parte* order under 28 U.S.C. § 1782(a) to obtain discovery from Thomas J. Pullukat, a resident of Lake Mary, Florida, to be used in a lawsuit that PQ intends to file against KD Corporation ("KD") in the Republic of Korea.[1] Doc. No. 1. PQ attached a number of exhibits to the Application, as follows:

- Declaration of John Lau, President of PQ Corporation's Catalysts Group (Doc. No. 1–1 at 2–10);
    - PQ Employee Agreement of Pullukat from 1991 (*Id.* at 11–12);
    - PQ Code of Conduct acknowledged by Pullukat (*Id.* at 13–22);
    - PQ's Consulting Services Terms and Conditions acknowledged by Pullukat (*Id.* at 23–28);
    - Letter from PQ Human Resources to Pullukat (*Id.* at 29–30);
    - PQ Employee Agreement of Pullukat from 2007 (*Id.* at 31–32);
    - List of Claims for patent number 10–1211924patent number 10–1211924 (*Id.* at 33–35);
    - General Information Printout from KD's website (*Id.* at 36–37);
    - Declaration of Hwan Sung Park, Korean attorney (*Id.* at 38–40);
    - Information in English and Korean on patent number 10–1095944patent number 10–1095944 and Translation Certification (*Id.* at 41–74);
    - Information in English and Korean on patent number 10–1211924patent number 10–1211924 and Translation Certification (*Id.* at 75–108);
- Subpoena to produce documents, information, objects or to permit inspection (*Id.* at 109–117);
- List of Claims for patent number 10–1095944patent number 10–1095944 (*Id.* at 118–120);
- List of Claims for patent number 10–1211924patent number 10–1211924 (*Id.* at 121–123);
- Subpoena to testify at deposition in a civil action (*Id.* at 124–132);
- List of Claims for patent number 10–1095944patent number 10–1095944 (*Id.* at 133–135); and
- List of Claims for patent number 10–1211924patent number 10–1211924 (*Id.* at 136–138).

KD filed an opposition to the Application, acknowledging that the Court has the legal authority to grant the Application but arguing that it should exercise its discretion and deny the request. Doc. No. 3. Attached to KD's response are the following:

- Declaration of Keith Shin, Director of KD (Doc. No. 3–1 at 2–3);
- Employment Agreement between KD and Pullukat (*Id.* at 4–5);
- Copy of Pullukat's KD business card (*Id.* at 6); and
- Declaration of Thomas J. Pullukat (Doc. No. 3–2).

With leave of Court, PQ filed a reply memorandum. Doc. No. 8. KD attached to the reply the following:

- Supplemental Declaration of John Lau, President of PQ Corporation's Catalysts Group (*Id.* at 6–8);
- Supplemental Declaration of Hwan Sung Park, Korean attorney (*Id.* at 9–13); and
- Declaration of Faith Ottenhoff, Research Librarian (*Id.* at 14–15).

The Application was referred to me for issuance of a Report and Recommendation. It is now ripe for resolution.

## II. BACKGROUND.

*A. Allegations of the Parties.*

According to the Application, PQ is the owner of certain proprietary and confidential technical information relating to catalysts. Catalysts are chemical substances that are used in a wide variety of industrial applications. The particular catalysts at issue in this Application are PQ's chrome-on-silica catalysts. They are used to make high-density polyethylene plastics. Doc. No. 1 at 2. Different methods of preparing the chrome-on-silica catalyst can result in high-density polyethylene plastics having different and possibly undesirable properties. Doc. No. 1–1, Declaration of John Lau ("Lau Dec.") ¶ 10. PQ has two Korean patents for their chrome-on-silica catalyst technology. *Id.* ¶ 23.

**\*3** KD is a silicate and silica gel manufacturer located in the Republic of Korea. KD's silica gel products are primarily used for desiccant applications. Silica gel is widely packaged with electronic products to ensure that they remain dry. Doc. No. 1 at 6. PQ avers that, prior to the early 2000s, KD did not make a chrome-on-silica catalyst. Lau Dec. ¶ 25. KD avers that it developed the chrome-on-silica catalyst technology independently, commercialized it and had sales before Pullukat began working for KD in 2009. Doc. No. 3–1, Declaration of Keith Shin ("Shin Dec.") ¶ 3.

Thomas J. Pullukat is a resident of Lake Mary, Florida, which is within the Orlando Division of the Middle District of Florida. Lau Dec. ¶ 29; *see also* Local Rule 1.02(b). Pullukat was employed by PQ from August 1991 to August 2006 and again from January 2007 to September 2007. Lau Dec. ¶¶ 2, 19, 20, 21. During his employment, Pullukat had access to all of PQ's formulas and recipes for PQ's chrome-on-silica catalysts, including proprietary and technical information relating to the catalysts at issue in the Application. Lau Dec. ¶ 5. Pullukat's employee agreement, PQ's code of conduct, and PQ's consultant agreement require Pullukat to keep the information confidential. Doc. No. 1–1 at 12, 18, 24–28, and 32.

Pullukat has been employed by KD since January 1, 2009 as a manager of sales and customer technical service of silica catalysts. Doc. No. 3–2, Declaration of Thomas J. Pullukat ("Pullukat Dec.") ¶ 1. PQ avers that Pullukat worked as a consultant for KD beginning in September 2006, after he retired from PQ, and again beginning in January 2008 after he resigned from his second period of employment by PQ. Lau Dec. ¶ 25; Doc. No. 8, Supplemental Declaration of John Lau ("Lau Supp. Dec.") at 6 ¶ 3. KD and Pullukat attest that Pullukat was never a consultant to KD. Pullukat Dec. ¶ 3; Shin Dec. ¶ 2.

PQ believes that Pullukat may have improperly disclosed its confidential and proprietary information allowing KD to reproduce and use PQ's chrome-on-silica catalyst technology. This enabled KD to make a commercially viable chrome-on-silica catalyst product. Lau Dec. ¶¶ 25, 26. PQ has analyzed samples of KD's chrome-on-silica catalyst, and it avers that it has established that KD is using PQ's proprietary technology in making KD's chrome-on-silica catalyst. *Id.* As a result, PQ believes KD is infringing PQ's Korean patents and proprietary trade secret technology. *Id.* ¶ 27.

*B. PQ's Discovery Request.*

PQ intends to take action in Korea against KD for patent infringement and trade secret misappropriation. *Id.* In the Application, PQ seeks documents and information for use in the Korean lawsuit relating to the alleged unauthorized disclosure of PQ's trade secrets related to chrome-on-silica technology. More specifically, PQ has prepared a subpoena that directs Pullukat to produce the following at a law firm located in Atlanta, Georgia:

> **\*4** 1. All documents and things relating to PQ's chrome-on-silica catalyst technology.
>
> 2. All documents and things relating to the subject matter of PQ's allowed chrome-on-silica catalyst technology Korean patent claims....
>
> 3. All communications (whether they are memorialized in documents, things, or otherwise) between Mr. Pullukat and KD or any person representing or acting on behalf of KD, including ... any documents, information, or other things that you have received from or provided to KD since retiring from PQ in September 2006.

Doc. No. 1–1 at 110–117. The subpoena also calls for production "for inspection and copying ... the hard drive(s) of any devices that you have used to communicate with KD from September 2006 through the present." *Id.* at 117. PQ also prepared a subpoena requiring Pullukat to appear for a deposition at a place and time to be established. *Id.* at 125. PQ requests that the Court compel Pullukat to provide the requested discovery in accordance with the Federal Rules of Civil Procedure, unless the Court deems otherwise. Doc. No. 1 at 15.

## III. ANALYSIS.

*A. 28 U.S.C. § 1782.*

"The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation." 28 U.S.C. § 1782(a). However, "[a] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege." *Id.* A district court has the authority to grant an application for discovery if the following statutory requirements are met:

> (1) the request must be made by a foreign or international tribunal or by any interested person; (2) the request must seek evidence, whether it be the testimony or statement of a person or the production of a document or other thing; (3) the evidence must be for use in a proceeding in a foreign or international tribunal; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance.

*In re Clerici,* 481 F.3d 1324, 1331–32 (11th Cir.2007) (quoting 28 U.S.C. § 1782(a)) (internal quotation marks omitted). As to the third factor, the proceeding must be within "reasonable contemplation," not that it be " 'pending or imminent.' " *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 259, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004) (citation omitted).

PQ asserts that it meets the *prima facie* requirements of § 1782. PQ is an interested person under the statute because it will be the plaintiff in the Korean lawsuit. *Id.* at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[ ]' who may invoke § 1782 ...."). It seeks documents and testimony from Pullukat for use in the anticipated Korean lawsuit. Doc. No. 1 at 9. Therefore, PQ has met the first, second, and third requirements of § 1782.

**\*5** Pullukat, from whom the discovery is sought, resides in Lake Mary, Florida which is within this Court's jurisdiction. Because Pullukat "reside [s] ... in the district of the district court ruling on the application for assistance," PQ has met the fourth requirement. *See Clerici,* 481 F.3d at 1332 (citing 17 U.S.C. § 1782(a)). Thus, this Court has the authority to grant the discovery request.

KD concedes that PQ has met the four threshold requirements of 28 U.S.C. § 1782(a). Doc. No. 3 at 1("KD does not dispute that this Court has the legal authority to grant the Application ...."). However, in its opposition to the Application, KD urges the Court to use its discretion to deny the Application for the reasons analyzed in the section below.

*B. Whether the Court Should Grant the § 1782 Discovery Application.*

"[A] district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." *Intel,* 542 U.S. at 264 (citation omitted). A district court has the discretion to determine whether to permit the discovery requested, *Weber v. Finker,* No. 3:07–mc–27–J–32MCR, 2007 WL 4285362, at \*4 (M.D.Fla. Nov.30, 2007) (citing *Clerici,* 481 F.3d at 1334), and if so, to craft an appropriate order, at the court's discretion, to address the information requested, *Lopes v. Lopes,* 180 F. App'x 874, 878 (11th Cir.2006) (quoting *Intel,* 542 U.S. at 260).

The United States Supreme Court has articulated four nonexclusive factors to consider in ruling on a § 1782(a) request once the *prima facie* requirements of the statute are met. The factors are: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of ... the court ... abroad to U.S. federal-court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country of the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Intel,* 542 U.S. at 264–65 (citations omitted).

1. *Participant in the Foreign Proceeding.*

"[W]hen the person from whom discovery is sought is a participant in the foreign proceeding ... the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising aborad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Intel,* 542 U.S. at 264. However, a non-participant "may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id*.

PQ asserts that its lawsuit in Korea for patent infringement and trade secret misappropriation will be against KD. Lau Dec. ¶ 27. According to the Application, Pullukat will not be a party to the Korean litigation. Doc. No. 1 at 11. Conversely, KD argues that because Pullukat is an employee of KD, the Korean court can compel KD to make Pullukat available for the Korean proceedings. Doc. No. 3 at 2. However, KD does not specifically dispute the assertion by PQ that Pullukat will not be a participant in the foreign proceeding.

**\*6** The person from whom the discovery is sought is Pullukat, who will not be a named party in the Korean litigation. Thus, KD's assertion that the first consideration weighs heavily against granting of the Application is not well taken. *See, e.g. Lopes,* 180 F. App'x at 877. KD, as a Korean company sued in Korean court, will be susceptible to the jurisdiction of the Korean court and can be compelled to produce evidence in its possession. In contrast, Pullukat, who is simply an employee of KD and lives in Florida, may not be subject to discovery in Korea. *See* Doc. No. 1–1 at 39 (Declaration of Hwan Sung Park ("Park Dec.")). Therefore, this first factor weighs in favor of PQ's discovery request.

2. *Nature of the Tribunal, Character of the Proceedings, Receptivity of the Court.*

According to PQ, the "character of the proceedings" in Korea will be a patent infringement and trade secret misappropriation proceeding before a district court in the Republic of Korea. Doc. No. 1 at 12; Lau. Dec. ¶¶ 24, 27. The purpose of PQ's discovery request is to ascertain the nature and scope of the information that was communicated to KD by Pullukat, if any, regarding PQ's chrome-on-silica catalyst technology. *See* Doc. No. 1 at 14. Attorney Hwan Sung Park, who is registered to practice patent law in the Republic of Korea, avers that while the issue of admission of information discovered would be in the discretion of the Korean district court, "based on the high level of relevance and materiality of this information to PQ's ... claims ..., it is high likely that the Korean courts would welcome such information and would receive it in evidence in any trade secret and patent infringement action between PQ and KD." Park Dec. ¶ 8. In light of Park's declaration, the nature of the foreign tribunal, the character of the proceedings, and the Korean court's receptivity to the discovery weigh in favor of granting the Application.

3. *Foreign Proof Gathering Restrictions.*

With regards to whether the request for discovery attempts to "circumvent [Korean] proof gathering restrictions," Attorney Park attests that the request does not circumvent Korean discovery rules and that no provision of Korean law precludes discovery taken in the United States pursuant to United States law. Doc. No. 8(Supplemental Declaration of Hwan Sung Park ("Park Supp. Dec.") at 10.

Pullukat avers that "[a]s an employee of a Korean company, I am available to the Korean court should that court determine that I have any relevant information to provide to the court." Pullukat Dec. ¶ 4. However, Attorney Park avers that the laws of the Republic of Korea do not provide for compulsory discovery or appearance at trial from a resident of the United States; the court may only request that a non-party appear and produce information. Park Supp. Dec. ¶ 5. Pullukat's indication that he is "available" to a Korean court is far from a commitment to produce documents and appear at trial if the court requests that he do so.

**\*7** "[N]othing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there." *Intel,* 542 U.S. at 260. Further, KD has not met its burden of proving that PQ is attempting to circumvent foreign proof-gathering mechanisms. Without a showing by KD that PQ "is actively seeking to circumvent the [Korean] tribunal's discovery methods and restrictions, which showing has clearly not been made here, this factor does not counsel against section 1782 relief." *In re Application of Mesa Power Group, LLC,* 878 F.Supp.2d 1296, 1305 (S.D.Fla.2012) (citation omitted).

4. *Unduly Intrusive or Burdensome.*

If a discovery request under § 1782 is unduly intrusive or burdensome, it may be rejected or trimmed. *Intel,* 542 U.S. at 265. PQ asserts that its requests are tailored to the dispute and that the Application should be granted in its entirety. *See* Doc. No. 1 at 14–15; Doc. No. 8 at 3. KD contends that PQ's request is overly broad and improperly seeks confidential information. *See* Doc. No. 3 at 3. KD also notes that PQ's request seeks confidential information regarding Pullukat's compensation arrangements. *Id.*

"[D]iscovery sought under section 1782 must ... comply with [Federal] Rule [of Civil Procedure] 26 and the other rules governing discovery in federal courts." *Heraus Kulzer, GmbH v. Biomet, Inc. .,* 633 F.3d 591, 596 (7th Cir.2011); *see also Clerici,* 481 F.3d 1336 ("Once discovery is authorized under § 1782, the federal discovery rules ... contain the relevant practices and procedures for the taking of testimony and the production of documents."). The proposed subpoenas to Pullukat are sweeping in subject matter and time. By way of example, as discussed above, the subpoena for production of documents requires Pullukat to produce all communications (whether they are memorialized in documents, things, or otherwise) between Mr. Pullukat and KD or any person representing or acting on behalf of KD without any subject matter or temporal limitation. This request alone would require Pullukat to produce, among other things, all of his communications with KD for all time. The court would not authorize a subpoena of this breadth, or enforce it in the face of objection, in civil litigation in this Court. *Compare Consorcio Ecuatorniano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.,* 685 F.3d 987, 999 (11th Cir.2012) (every request in the subpoena limited the requests to the contract at issue).

Because the balance of factors weigh in favor of permitting more narrowly tailored discovery, it appears that more limited discovery should be permitted. If the Application is granted in part, PQ may pursue discovery as provided for in the Federal Rules of Civil Procedure, negotiate a confidentiality agreement if one is required, and give Pullukat leave to object or file a motion for a protective order.

### IV. RECOMMENDATION.

*8 Accordingly, I **RESPECTFULLY RECOMMEND** that the Court do the following:

1. **GRANT in part** PQ's Application for an Order Pursuant to 28 U.S.C. § 1782(a) to Obtain Discovery for Use in Foreign Proceedings (Doc. No. 1);

2. **DENY** PQ's request to serve the proposed subpoenas submitted with the Application;

3. **PERMIT** PQ to serve more narrowly tailored subpoenas within a discovery time established by the Court; and

4. **PERMIT** Pullukat to object to the subpoenas or file a motion for a protective order as provided for in the Federal Rules of Civil Procedure after conferring with counsel for PQ as required by Local Rule 3.01(g).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on June 5th, 2013.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 3270407

---

### Footnotes

1     Although the Application seeks *ex parte* relief, PQ served it on Pullukat.

---

**End of Document**       © 2020 Thomson Reuters. No claim to original U.S. Government Works.