IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:20-MC-00004-M

| | |
|---|---|
| In re: )<br>)<br>)<br>APPLICATION OF MOTHER'S )<br>MILK, INC., FOR *EX PARTE* )<br>ORDER TO OBTAIN DISCOVERY )<br>FOR USE IN FOREIGN )<br>PROCEEDINGS )<br>) | **ORDER** |

This matter is before the court on interested party Motif Medical, LLC's ("Motif") Motion to Quash Subpoenas [DE-7] served by Mother's Milk, Inc. ("Mother's Milk") pursuant to an ex parte application filed under 28 U.S.C. § 1782, granted by this court on February 27, 2020 [DE-6].

I. Factual and Procedural Background

On February 21, 2020, Mother's Milk filed an application [DE-1] seeking an ex parte order under 28 U.S.C. § 1782(a) to obtain discovery from Motif Medical LLC ("Motif"), a North Carolina company, for use in an ongoing patent infringement litigation in the Republic of Korea (hereinafter "Korea"). In support of its application, Mother's Milk filed a memorandum [DE-2] and several exhibits:

- Exhibit 1 Declaration of Hwan Sung Park, a patent attorney licensed and practicing in Korea [DE-2-1];

- Exhibit 2 Declaration of Heidi Humphries, the President and CEO of Mother's Milk [DE-2-2];

- Exhibit 3 Declaration of Christopher P. Foley, an IP attorney who successfully used Section 1782 to help his client obtain discovery in the United States for use in another patent case in Korea [DE-2-3];
  - Exhibit 3-A Copy of order *In re Appl. of PQ Corp. for Ex Parte Order to Obtain Discovery for Use in Foreign Proceedings*, Case No. 6:13-mc-9-Orl-36KRS, 2013 WL 3270407 (M.D. Fla. June 26, 2013);
- Exhibit 4 Declaration of Adam B. Arnold, paralegal at Ellis & Winters LLP, who performed a trademark search for trademarks owned by Motif [DE-2-4];
  - Exhibit 4-A Copy of "Clean-Z" trademark;
- Exhibit 5 Proposed Subpoena Duces Tecum [DE-2-5];
- Exhibit 6 Proposed Subpoena Ad Testificandum [DE-2-6]; and
- Exhibit 7 Proposed Order [DE-2-7].

A. Korean Litigation

Mother's Milk has distributed breast pumps and related products in the United States under the "Spectra" brand name since 2011. Humphries Decl. ¶ 1, DE-2-2. The Spectra-brand pumps are supplied to Mother's Milk by a Korean company, Uzin Medicare, operated by Byung Wook Min. ¶ 2. Mother's Milk has an ownership interest in the intellectual property related to the Spectra-brand products and is authorized to sell those products in the United States and much of South America. *Id.*; *see also* Park Decl. ¶¶ 2-4, DE-2-1.

According to the Declaration of Heidi Humphries, President and CEO of Mother's Milk, Mother's Milk recently discovered that Motif is using Spectra's popular trade dress and designs in connection with the sale of its Luna breast pump. Humphries Decl. ¶ 5, DE-2-2. Motif's pumps are manufactured and supplied by Cimilre Co., Ltd. ("Cimilre"), another Korean company

2

allegedly founded by a former, disgruntled employee of Uzin Medicare. ¶ 6. Based on this, Mother's Milk initiated a suit against Cimilre in Korea for the misappropriation of intellectual property associated with Spectra-brand products on January 9, 2020. ¶ 7; *see also* Park Decl. ¶¶ 5-6, DE-2-1. In connection with the Korean litigation, Mother's Milk represented that it "will request that the court order Cimilre to produce product and sales information, [but] there is no guarantee that the court will issue an order, no guarantee that Cimilre will comply, and no suitable recourse if Cimilre does not." Park Decl. ¶ 7, DE-2-1.

B. Discovery Requests

According to Korean patent attorney Hwan Sung Park, "[c]ompulsory, pre-trial discovery, as it is conducted in the United States, is not generally available in Korea." Park Decl. ¶ 7, DE-2-1. However, information obtained via discovery in the United States is accepted as evidence by the Korean courts. ¶ 9; *see also* Foley Decl. ¶ 4, DE-2-3 ("The technical and sales information obtained as a results of PQ's Application for *Ex Parte* discovery was introduced at [a patent-infringement] trial in the Korean Court and accepted by the Judge. The technical information was important in supporting a finding by the Korean court of patent infringement. . . . PQ was awarded $2M in damages.").

Mother's Milk, through its Section 1782 application, sought discovery in the form of documents/things and testimony from Motif to support the ongoing Korean litigation. The documents and things requested broadly related to: (1) total annual sales from 2015[1] to the present of Motif breast pumps and accessories supplied by Cimilre; (2) design and operation of Motif

---

[1] 2015 is apparently the year Motif was founded. *See* Mem. in Supp. of Appl., DE-2 at 8-9.

3

breast pumps and accessories from 2015 to the present supplied by Cimilre; (3) breast pump protectors used on Motif breast pump products from 2015 to the present that were not supplied by Cimilre; and (4) a sample of each style of Motif breast pump protectors from 2015 to the present supplied by Cimilre. Proposed Subpoena Duces Tecum at 9,[2] DE-2-5. In addition, Mother's Milk sought the testimony of a person or persons designated to speak on behalf of Motif pursuant to Federal Rule of Civil Procedure 30(b)(6). The topics of testimony listed were generally: (1) design features of Motif breast pumps and accessories from 2015 to the present; (2) length of time each product has been offered for sale; (3) length of time each backflow protector has been offered for sale; (4) length of time the various control-button designs on breast pumps have been in use; (5) sales information related to Motif's current family of breast pumps; (6) sales information related to the backflow protector; and (7) the history of Motif's business relationship with Cimilre. Proposed Subpoena Ad Testificandum at 5-6, DE-2-6.

By court order issued February 27, 2020, the discovery requests were granted with one modification. DE-6. Mother's Milk was directed to remove it's third request for documents and things listing "[a]ll documents and things, including videos, photographs, or computer images relating to breast pump protectors used on or in connection with current or prior Motif breast pumps *not* supplied by Cimilre, from 2015 to present." *Id.* The court determined that because the requested evidence was ultimately to support patent-infringement claims against Cimilre, information about Motif's other suppliers was irrelevant.

---

[2] Page numbers refer to the page number of the document designated in the court's electronic case filing system, not to the page numbering, if any, specified on the face of the underlying document.

4

C. Motion to Quash

On March 5, 2020, Mother's Milk served the subpoenas with the modification ordered by the court. DE-7 ¶ 2.³ On March 20, 2020, Motif sent a letter to Mother's Milk outlining its objections to the subpoenas. ¶ 5. Mother's Milk and Motif subsequently exchanged emails and held a telephone conference in an effort to resolve this discovery dispute but were unsuccessful. ¶ 6. On April 14, 2020, Motif filed its Motion to Quash Subpoenas [DE-7], memorandum in support [DE-8], and six exhibits including the Declaration of Yo-Jin Jeong [DE-7-1], a patent attorney licensed and practicing in Korea, the subpoena ad testificandum and duces tecum as served on Motif [DE-7-2; DE-7-3], a March 20, 2020 letter from counsel for Motif to counsel for Mother's Milk outlining Motif's objections to the subpoenas [DE-7-4], a March 29, 2019 cease-and-desist letter from counsel for Mother's Milk to Motif [DE-7-5], and an April 6, 2020 settlement-demand letter from counsel for Mother's Milk to counsel for Motif [DE-7-6]. Mother's Milk responded in opposition on April 28, 2020 [DE-12], attaching one exhibit, the second declaration of Christopher P. Foley [DE-12-1]. With leave of the court [DE-17], Motif filed a reply in support of its motion on May 7, 2020 [DE-18]. The court has considered each of the parties' submissions and the motion is ripe for ruling.

II. Legal Standards

A district court has wide discretion in responding to requests pursuant to 28 U.S.C. § 1782. *Al Fayed v. United States*, 210 F.3d 421, 424 (4th Cir. 2000). "In exercising its discretion under § 1782, the district court should be guided by the statute's twin aims of providing efficient means of

---

³ The date selected for the deposition was May 26, 2020. DE-7 ¶ 3. The deadline for the production of documents and things, April 15, 2020. DE-7 ¶ 4.

5

assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Id.* at 424 (internal quotations and citation omitted). Once a subpoena issues pursuant to Section 1782 the manner in which discovery proceeds is governed by the discovery rules found in the Federal Rules of Civil Procedure. *See* 28 U.S.C. § 1782(a) ("The order may prescribe the practice and procedure . . . for [discovery]. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure."); *see also Gov't of Ghana v. ProEnergy Servs., LLC*, 677 F.3d 340, 343 (8th Cir. 2012) ("However, § 1782 does not establish a standard for discovery. Instead, it provides for a threshold determination of whether to allow foreign litigants to enjoy discovery in U.S. courts in accordance with federal rules. The manner in which discovery proceeds will be determined by normal discovery rules.") (citations omitted).

Under Rule 45 of the Federal Rules of Civil Procedure, a court is obligated to quash or modify a subpoena that "fails to allow a reasonable time to comply"; "requires a person to comply beyond the geographical limits specified in Rule 45(c)"; "requires disclosure of privileged or other protected matter . . . "; or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). The rule permits a court to quash or modify a subpoena that requires "disclosing a trade secret or other confidential research, development, or commercial information" or "disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party." Fed. R. Civ. P. 45(d)(3)(B). On a motion to quash a subpoena, the moving party bears the burdens of proof and persuasion. *See, e.g., Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 n.2 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 672 (U.S. 2019).

III. Analysis

The court will address the statutory requirements of Section 1782, the four factors laid out by the Supreme Court in *Intel*, followed by each of Motif's remaining arguments.

A. Statutory Requirements of 28 U.S.C. § 1782

A "district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person." 28 U.S.C. § 1782(a). However, "[a] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege." *Id.*

The four key statutory requirement are thus: (1) the requestor must be either a foreign or international tribunal or an interested person; (2) the request must seek evidence in the form of document, thing, and/or testimony; (3) the evidence must be for use in a proceeding in a foreign or international tribunal; and (4) the person from whom discovery is sought must be located in the same district as the court the request was directed to. *Id.*

On the basis of its application, this court determined that Mother's Milk met these four statutory requirements. As a party to an ongoing patent-infringement suit in Korea, Humphries Decl. ¶ 7, DE-2-2, Mother's Milk qualifies as an interested person. Through its application, Mother's Milk sought the production of documents, things, and testimony. *See* Proposed Subpoena Duces Tecum, DE-2-5; Proposed Subpoena Ad Testificandum, DE-2-6. The discovery is being requested so that it may be used in the ongoing patent-infringement suit in Korea, specifically Case No. 2020 GAHAP 501790. Mem. in Supp. of Appl., DE-2 at 1; *see also* Park Decl. ¶ 6, DE-2-1.

7

And finally, according to the application filed by Mother's Milk, the company from whom discovery is sought, is located in Raleigh, North Carolina, which falls under the jurisdiction of the Eastern District of North Carolina. *See* Copy of "Clean-Z" trademark at 5, DE-2-4 (indicating that Motif is the owner of the "Clean-Z" trademark and that the company is located in Raleigh, North Carolina). Motif does not appear to dispute that Mother's Milk's application meets the prima facie requirements of the statute.

B. Factors pursuant to *Intel*

In *Intel Corp. v. Advanced Micro Devices, Inc.*, the Supreme Court outlined several additional factors "that bear consideration in ruling on a § 1782(a) request." 542 U.S. 241, 264 (2004). They include: (1) whether the party from whom discovery is sought is already a participant to the foreign litigation, which weighs against granting the order because of the foreign tribunal's ability to reach the evidence in question; (2) the nature of the foreign litigation and whether that forum is receptive to U.S. federal-court assistance; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and finally (4) whether the request is "unduly intrusive or burdensome." *Id.* at 264-65.

This court determined that three of the four factors weighed in favor of granting Mother's Milk's application. First, Motif is not a party to the ongoing litigation in Korea, although it is in business with the entity being sued there. Humphries Decl. ¶ 6, DE-2-2. Because there is no guarantee under the laws of Korea that discovery requested of the Korean entity will actually result in the production of information, Park Decl. ¶ 7, DE-2-1, obtaining the relevant information under the laws of the United States from Motif should provide helpful evidence to the Korean court. Second, there is no clear directive from the Korean court declining assistance. *See In re Ex Parte*

8

*Appl. of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1040-41 (N.D. Cal. 2016) (finding second *Intel* factor weighed against applicant where the Korea Fair Trade Commission filed an amicus brief specifically asking the court "to deny [the] applications in their entirety as a matter of comity," further stating that "the KFTC has no need or use for the requested discovery"). To the contrary, Mother's Milk directed the court to a recent example of a Korean court accepting U.S. federal-court assistance in patent litigation. *See* Foley Decl. ¶¶ 1-4, DE-2-3. Third, there did not appear to be an attempt by Mother's Milk to circumvent foreign or domestic proof-gathering restrictions or policies. Finally, as originally written, the court found discovery requests designed to seek information about Motif's products that were not supplied by Cimilre to be unduly intrusive and burdensome.

For this reason, the court explicitly directed Mother's Milk to eliminate one such document request, see DE-6, but failed to direct Mother's Milk to place similar limitations on topics identified for deposition. Mother's Milk has since agreed to only seek information related to Motif's products supplied by Cimilre. *See* DE-12 at 12 ("The document requests and deposition topics are narrowly tailored to sales, technical information, and information related to breast pump product parts *Motif has purchased from Cimilre* since Motif's founding in 2015.") (emphasis added); *see also* Email from C. Foley to J. Schouten, Mar. 23, 2020, DE 14-2 ("We will agree that none of the discovery sought by the subpoenas will contravene the Judge's Order with respect [to] pumps and parts not supplied by Cimilre."). The subpoenas shall accordingly be modified in this way.

Motif maintains that information regarding its sales in the United States is "wholly irrelevant" to a Korean action against a Korean company for violating a Korean patent. DE-8 at 10-11; *see also* Jeong Decl. ¶ 8, DE-7-1 ("Any damages to which Mother's Milk would be entited

9

in the Lawsuit are based on Cimilre's sales, not Motif's sales in the United States."). In response, Mother's Milk clarified that it is "seeking information about Cimilre's sales to Motif, not Motif's sales to other buyers." DE-12 at 6. There is disagreement amongst the parties regarding what transpired during a telephonic meet-and-confer conference on this precise issue. *See generally* Second Foley Decl., DE-12-1; DE-13; DE-14; and DE-18. The parties even disagree regarding which date the call took place. *Compare* Second Foley Decl. ¶ 6, DE-12-1 (April 13, 2020) *with* Motif's Reply at 1, DE-18 (April 14, 2020). No matter what was said or when, Mother's Milk is representing to the court that it will no longer seek Motif's U.S. sales information, which the court agrees is irrelevant, and the subpoenas shall accordingly be modified in this way.

### C. Motif's Other Arguments

#### i. Availability of Discovery in Korean Litigation

Motif's central argument is that most of the information sought by Mother's Milk can be obtained in the Korean proceeding from Cimilre, a party to that proceeding. In support, Motif relies upon the declaration of another Korean patent attorney, whose firm represents Cimilre. The declarant described discovery procedures pursuant to the Civil Procedure Act of Korea, which he said do allow for court-ordered discovery of documents and testimony from both parties and non-parties to the litigation. Jeong Decl. ¶¶ 10-11, DE-7-1. "Unless special circumstances exist, a Korean court would tend to grant an application to obtain relevant information from the opposing party in the lawsuit." ¶ 10. He also stated that Cimilre has most of the requested information. ¶¶ 6-9. He also represented that "[i]f the Korean court ordered Cimilre to produce relevant and necessary documents to Mother's Milk in the Lawsuit, Cimilre would comply." ¶ 14.

As the Second Circuit explained

> We do not believe that an extensive examination of foreign law
> regarding the existence and extent of discovery in the forum country

10

is desirable in order to ascertain the attitudes of foreign nations to outside discovery assistance. For, as a chief architect of section 1782's current version recently stated:

> ["][the statute's] drafters realized that making the extension of American assistance dependant on foreign law would open a veritable Pandora's box. They definitely did not want to have a request for cooperation turn into an unduly expensive and time-consuming fight about foreign law. That would be quite contrary to what they sought to be achieved. They also realized that, although civil law countries do not have discovery rules similar to those of common law countries, they often do have quite different procedures for discovering information that could not properly be evaluated without a rather broad understanding of the subtleties of the applicable foreign system. It would, they judged, be wholly inappropriate for an American district court to try to obtain this understanding for the purpose of honoring a simple request for assistance.["]
>
> Hans Smit, *Recent Developments in International Litigation*, 35 S. Tex. L.J. 215, 235 (1994).

*Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099 (2d Cir. 1995). Nonetheless, at least one district court that considered the Korean discovery process concluded that it does not contemplate depositions. *See In re Medytox, Inc.*, Case No. 1:18-mc-00046-TWP-DLP, 2019 WL 3162174, at *7 (S.D. Ind. July 16, 2019), *R. & R. adopted*, Case No. 1:18-mc-00046-TWP-DLP, 2019 WL 3556930 (S.D. Ind. Aug. 5, 2019) ("Medytox's request to depose Dr. Lee does not circumvent any Korean discovery procedures because the Korean law does not extend so far as to contemplate depositions.").

This court agrees with the Second Circuit and thinks it "unwise—as well as in tension with the aims of section 1782—for district judges to try to glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law." *Euromepa S.A.*, 51 F.3d at 1099. Given the conflicting testimony of the Korean patent attorneys, it is unclear whether (and to what extent) discovery will be obtained from Cimilre.

11

Furthermore, Mother's Milk is seeking to depose a designated representative of Motif. Depositions are a discovery mechanism that are possibly unavailable in Korea. Therefore, obtaining relevant information under the laws of the United States from Motif should provide helpful evidence to the Korean court in moving the case forward.

ii. No Exhaustion of Foreign Discovery Requirement

In addition, Motif argues that "Mother's Milk has not even attempted to use [Korean discovery] procedures to obtain the subpoenaed material from Cimilre." DE-8 at 8. Because the requested information can be obtained through Korean discovery procedures and Cimilre will produce the information upon request, Motif argues that the fact that Mother's Milk has not requested discovery in the Korean litigation weighs in favor of quashing the subpoenas. *Id.* This is tantamount to interposing an exhaustion requirement, but this is simply not supported by the caselaw.

At least two circuit courts to have considered this issue have declined to adopt a quasi-exhaustion requirement. The Second Circuit found that a district court abused its discretion "to the extent the district court rested its decision to deny discovery to Malev because a request for discovery from Pratt & Whitney had not first been made to the Hungarian court in Budapest." *Appl. of Malev Hungarian Airlines*, 964 F.2d 97, 100-01 (2d Cir. 1992), *cert. denied sub nom. United Tech. Int'l Inc. v. Malev Hungarian Airlines*, 506 U.S. 861 (1992) ("We find nothing in the text of 28 U.S.C. § 1782 which would support a quasi-exhaustion requirement of the sort imposed by the district court."). The Eleventh Circuit found "[o]ther courts have held that even when the requested documents may be available in the foreign jurisdiction, there is no requirement to first seek discovery from the non-US tribunal or exhaust other options before applying to a district court

12

Case 5:20-mc-00004-M   Document 19   Filed 05/15/20   Page 12 of 17

for § 1782 discovery. . . . We too decline to adopt such a requirement." *In re: Appl. of Bracha Found.*, 663 F. App'x 755, 765 (11th Cir. 2016). This court agrees.

### iii. Pretext for Future U.S. Litigation

Motif points to no authority, and this court has not identified any, *prohibiting* the grant of a Section 1782 application where, as here, the applying party presents a colorable claim of being able to use the discovery in an ongoing foreign proceeding simply because the same discovery might inform or be used in future legal action in the United States.

The closest analogue the court found was a case from the Eleventh Circuit. As a matter of first impression, the Eleventh Circuit held that the use of evidence procured under Section 1782 in subsequent United States litigation is not precluded. *Glock v. Glock, Inc.*, 797 F.3d 1002, 1010 (11th Cir. 2015). In *Glock v. Glock, Inc.*, the Section 1782 case was initiated to seek discovery from various Glock business entities in the United States for use in a divorce proceeding in Austria between Helga Glock and her husband Gaston Glock, the creator of the Glock 17 handgun. *Id.* at 1004-05.

The Glock Entities made an argument similar to that which Motif is making here regarding the third *Intel* factor and circumvention of U.S. proof-gathering restrictions or other policies. "[C]onstruing § 1782 in a way that does not prohibit later use, in United States proceedings, of evidence obtained under the statute would allow parties to circumvent domestic discovery rules." *Id.* at 1009. Furthermore,

> [i]n a single footnote in their brief, the Glock Entities suggest that Helga, in fact, obtained evidence under § 1782 with the intention all along of using it in the United States RICO litigation. In particular, they assert, "The fact that [Helga] filed a 354[-]page complaint in the RICO Action, which was not drafted overnight, suggests that she

13

> long ago made the decision to file an action against the U.S. Glock
> Entities in the United States."

*Id.* at 1010 n.10.

After considering the statutory text, legislative history, conventional discovery practice, and policy considerations, the court ultimately disagreed. *Id.* at 1010 ("In short, we find that § 1782 does not preclude, as a matter of law, the use of evidence procured pursuant to it in subsequent United States civil litigation."). However, the Eleventh Circuit acknowledged

> a § 1782 applicant could attempt to abuse the statute to obtain documents outside the discovery procedures set forth in the Federal Rules of Civil Procedure. But it naturally follows from the existence of the third *Intel* factor that this kind of subterfuge is a valid reason to reject a § 1782 application in the first place. Parties concerned in a particular case that a § 1782 applicant is attempting to use foreign litigation as a ruse for obtaining discovery in the United States without complying with the usual procedures of the Federal Rules of Civil Procedure can and should bring evidence of such chicanery to the § 1782 court's attention.
>
> And even when no evidence of deception exists, nothing prevents a party from seeking to negotiate a protective order precluding the evidence from being used in United States civil litigation, particularly if the party has reason to believe that it risks exposure to United States litigation based on the evidence produced. Should negotiations fail, a party, for good cause, may also ask the § 1782 court to enter a protective order prohibiting use, in United States proceedings, of documents obtained under the statute. *See* Fed. R. Civ. P. 26(c)(1). The judge can then decide whether, under the particular circumstances of the case, she believes the entry of such an order to be appropriate. Just as courts have substantial experience controlling discovery abuse in domestic litigation, we have no doubt that district courts can similarly root out sham applications under § 1782.

*Id.* at 1009.

This court is not persuaded by Motif's argument based on the District Court of the Northern District of California's decision in *Baxalta Inc. v. Genetech, Inc.* for several reasons that make the

case distinguishable. Case No. 16-mc-80087-EDL, 2016 WL 11529803 (N.D. Cal. Aug. 9, 2016). First, the *Baxalta* court questioned whether the second, prima facie statutory factor, "for use in foreign proceeding," was met because the Japanese court planned to hold a hearing the following month to determine whether to close the pending patent infringement action altogether due to the likelihood of non-infringement or an experimental-use/research exemption. *Id.* at *2, *4, *5. Here by contrast, as the Korean litigation was initiated in January and remains ongoing, with no evidence presented that it will settle or be otherwise dismissed any time soon. Second, in *Baxalta*, the issue before the Japanese court was purely a "question of law – the research exemption – that could end the case without the need for any additional discovery." *Id.* at *6. Here, the Korean litigation is still in its early stages, with outstanding questions of both law and fact to determine, and additional discovery will likely be helpful. Third, the applying party in *Baxalta* had "a pending Section 1782 application seeking the very same categories of information from Chugai Pharma USA," the domestic subsidiary of the company being sued in Japan. *Id.* at *5. Here, there is no evidence that Mother's Milk has any other pending Section 1782 applications. Finally, the extent of information sought in *Baxalta* is distinguishable as it included "licensing agreements, FDA applications, information about Genentech's meetings with the FDA and briefing books", which the court found to be overbroad and burdensome. *Id.* at *8. Here, with the required modifications, the discovery requests are narrowly tailored to seek information for use in the Korean litigation.

In discussing Genentech's pretext argument, the *Baxalta* court commented that the discovery requests "seem directed to a future lawsuit against Genertech as opposed to Chugai's activities relating to a molecule patent in Japan." *Id.* at *7. But it was this, in conjunction with other facts surrounding the context of the application, that indicated to the court an attempt to circumvent foreign or domestic policy or proof-gathering restrictions. *Id.* at *7 ("In view of the

15

overbreadth of Baxalta's requests that encompass highly sensitive and largely irrelevant information about Genentech's research activities that seem directed to a future lawsuit against Genentech as opposed to Chugai's activities relating to a molecule patent in Japan, coupled with its quick filing of three identical ex parte Section 1782 applications before the complaint was even served on Chugai, the circumvention factor also weighs in favor of quashing Baxalta's subpoenas.").

Motif, as the moving party bearing the burden of proof, has presented evidence of what it sees as Mother's Milk's circumvention tactics: a March 2019 cease-and-desist letter [DE-7-5] and an April 2020 letter [DE-7-6] referencing "Motif's purported duty to produce documents under the Subpoenas by April 15 as leverage when making an additional cease and desist demand to Motif." DE-8 at 5. The March letter alleges that Motif is misappropriating Mother's Milk's trade-dress applications on file with the United States Patent and Trademark Office and includes a demand for a "full accounting of sales." DE-7-5 at 3, 5. Motif argues that because it never produced the requested information, Mother's Milk initiated its Section 1782 application to seek the same information. DE-8 at 9-10. Because the subpoenas will be modified to exclude United States sales information, concerns regarding the discoverability of information related to potential damages in a possible infringement action against Motif will be allayed.

IV. Conclusion

Based on the foregoing, Motif's Motion to Quash Subpoenas [DE-7] is GRANTED IN PART AND DENIED IN PART; the court hereby ORDERS the subpoenas reissue with the following modifications:

- Mother's Milk will clarify that it is only seeking information related to Motif's products supplied by Cimilre;

16

- Mother's Milk will clarify that it is not any seeking information about Motif's United States sales; and

- Mother's Milk will set new deadlines for compliance with the subpoenas that allow a reasonable time to comply, as April 15th has past and May 26th is fast approaching.

SO ORDERED this the 15th day of May, 2020.

RICHARD E. MYERS II
U.S. DISTRICT COURT JUDGE